



UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No. 10-38019-A-7 |
| KEVIN M. HEALY, | |
| Debtor. | |
| M. CYNTHIA ROSE, | Adv. No. 10-2606 |
| Plaintiff, | |
| vs. | |
| KEVIN M. HEALY, | |
| Defendant. | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

By her complaint, plaintiff M. Cynthia Rose ("Rose") seeks to except from defendant Kevin M. Healy's chapter 7 discharge the fees and costs she incurred while defending a meritless lawsuit

1  brought against her by Healy.  Rose maintains that this
2  prosecution was both willful and malicious.
3
4                       Statement of Facts
5       1.   Healy has been a California attorney since 1994.  He
6  began representing Rose sometime in the late 1990's.  By 2002,
7  Healy and his client had ended their attorney-client
8  relationship.  They did not end their relationship on good terms.
9  Rose disputed that she owed fees to Healy and she filed a
10 complaint against him with the California State Bar.
11      2.   This adversary proceeding directly implicates the fee
12 dispute between the parties.  Their fee dispute was sent to a fee
13 arbitration that took place on January 31 and February 1, 2002.
14      3.   While awaiting the arbitrator's decision and award, in
15 connection with the State Bar complaint, the State Bar sent
16 Healy, among other things, a copy of Rose's check in the amount
17 of $1,250.  See Exhibit LL.  This was the amount Rose actually
18 paid toward the $3,500 filing fee for the fee arbitration.  Prior
19 to receipt of the $1,250 check, Healy believed Rose had paid the
20 entire $3,500 filing fee.  Rose had claimed in the arbitration
21 that she had paid the entire $3,500.
22      4.   On March 29, 2002, the arbitration award was issued.
23 Healy was awarded $77,076.75, which was reduced by $1,750 as his
24 half of the $3,500 filing fee for the arbitration fee paid by
25 Rose.
26      5.   The award, then, gave Rose a credit equal to one-half
27 of the $3,500 arbitration filing fee even though she had actually
28 only paid less than half of that fee, $1,250.  Despite this

discrepancy, Healy did not move to vacate or correct the
arbitration award, or even write to the arbitrators or Charles
Bauer, Rose's attorney, regarding this discrepancy.

6.    Instead, on April 27, 2004, Healy filed a lawsuit
against Rose in Sacramento County Superior Court, asserting that
Rose had committed perjury during the fee arbitration.  Her
perjury consisted of testifying that she had paid $3,500 for the
fee arbitration when she had in fact paid only $1,250.  Healy
sought damages of $1,125, the difference between one-half of
$3,500 and one-half of $1,250, as well as unspecified "special"
damages and punitive damages of $1 million.

7.    On June 1, 2004, Rose, filed a motion under California
Code of Civil Procedure § 425.16 (the "anti-SLAPP" statute) to
dismiss the complaint.  Healy did not file opposition to the
motion addressing its merits.  Instead, he moved to disqualify
the trial court judge.  The case was then reassigned to another
judge.  Healy then moved to disqualify the second judge.  The
case was assigned to a third judge and the hearing on the motion
to dismiss the complaint was rescheduled for July 21, 2004.

8.    Again, Healy filed no opposition addressing the merits
of the motion.  Instead, the day prior to the hearing he filed a
letter demanding a stay of the proceedings, asserting his
military service required a stay under the terms of the Service
Members Civil Relief Act until October when his reserve duty was
scheduled to end.

9.    On July 21, 2004, the Sacramento County Superior Court
refused to stay the hearing and granted Rose's anti-SLAPP motion,
holding that the litigation privilege of California Civil Code §

47 provided an absolute defense to Healy's action and that "as a
matter of law plaintiff cannot show probability of prevailing on
the merits."  Rose thereafter moved for the attorneys' fees and
costs she had incurred in striking Healy's complaint and opposing
Healy's attempts to stay the progress of the action.

10.  On August 16, 2004, before Rose's motion for fees and
costs could be heard, Healy filed his first bankruptcy case.
Rose sought and received relief from the automatic stay to go
forward with the hearing on her motion for fees and costs.  Eight
days after the order granting relief from the stay was entered,
the bankruptcy case was dismissed.

11.  The state court ultimately awarded Rose $14,280 in
attorneys' fees and $734.62 in costs.  Rose has collected the
fees awarded to her under this Order, and they are not at issue
in the instant proceeding.

12.  Thereafter, Healy moved to set aside the dismissal of
his state court complaint.  The state court denied this motion
noting that Healy had not filed any opposition to Rose's
anti-SLAPP motion, nor had he demonstrated that Civil Code § 47
was not an absolute defense to his suit against Rose.  The state
court further concluded that Healy had not acted in good faith in
asserting protection under the Service Members Civil Relief Act
and was seeking to use the protections of that Act to
"deliberately and willfully attempt[] to evade ultimate
determination of the issues involved in the litigation."

13.  On May 20, 2005, Healy filed a state court appeal.  His
notice of appeal included "the issue of the Court improperly
determining that Civil Code §47 provides a complete bar to civil

-4-

1  proceeding. . . ."    However, his later appellate brief failed to
2  make any substantial argument on this point or cite any authority
3  in support of his assertion that his action against Rose had any
4  merit.

5       14.    On February 14 2007, the Third District Court of Appeal
6  dismissed Healy's appeal from the anti-SLAPP order as untimely,
7  affirmed the award of attorney fees, and awarded appellate costs
8  to Rose.

9       15.    On April 24, 2007, Rose, by and through her attorney,
10  filed a motion for the attorneys' fees she had incurred on the
11  appeal.    On June 12, 2007, the Sacramento County Superior Court
12  entered judgment for Rose for attorney fees and costs totaling
13  $12,739.68.

14       16.    Healy next moved to reconsider and set aside the June
15  12, 2007 judgment.    The state trial court's tentative ruling was
16  to deny the motion and to order Healy to show cause why he should
17  not be sanctioned for a frivolous motion calculated solely to
18  achieve delay.    Healy then moved to disqualify the state court
19  judge.    Ultimately, the state court declined to reconsider its
20  judgment.

21       17.    On October 10, 2007, Rose filed a motion for
22  post-judgment attorneys' fees, seeking an additional $6,180 in
23  fees and $243.68 in costs incurred since April 24, 2007.

24       18.    In the interim, Rose attempted to collect the June 2007
25  judgment from Healy.    On December 5, 2007, an order for
26  examination of Healy was scheduled to take place.    The evening of
27  December 4, 2007, Healy sent a fax to Rose's attorney stating
28  that the matter is "paid and stayed" and ordering her to inform

the court that the examination would not go forward.  Based on
Healy's providing a receipt from the sheriff in the amount of
$13,087.46, Rose's attorney cancelled the examination.  Healy,
however, had not paid the judgment.  His $13,087.46 check was
written against insufficient funds.  As of December 4, 2007, the
date the check was written, Healy had less than $600 in the
account.

19.  The state court eventually awarded Rose $11,400 in
attorney fees and $782.10 in costs, which was added to the June
12, 2007 judgment for fees and costs.

20.  Rose's complaint seeks to have declared
nondischargeable the awards of June 12, 2007 and July 11, 2008.
These total $24,921.78 and they remain unpaid.

21.  Healy filed this bankruptcy case on July 9, 2010.  He
has obtained his chapter 7 discharge, subject to the outcome of
this proceeding.

22.  This brief and rather antiseptic recitation of the
relevant facts does not convey the antipathy between Healy, on
the one hand, and Rose and her attorneys, on the other hand.
After listening to the testimony of the witnesses and the
arguments of counsel, it is clear to this court that a deep-
seated hostility and animosity that predates the fee arbitration
has animated the litigation between the parties.  This may be due
to the rift that caused the fee dispute, Rose's complaints to the
State Bar, or to the state court's refusal to entertain Healy's
requests for a stay or honor all of his recusal challenges.
Whatever the cause, the court finds that when Healy filed the
state court action accusing Rose of perjury, he did so knowing it

lacked legal merit and in order to harass his former client. This is clear from the foregoing as well as the following facts:

a.   Most puzzling is Healy's failure to make any attempt to modify the arbitration award based on the discovery that Rose had not paid the entire $3,500 arbitration filing fee. For instance, Cal. Civ. Pro. Code § 1285 *et seq.*, lays out the procedures to vacate or modify arbitration awards.  None were invoked by Healy.  Instead, he opted to file a separate suit for perjury.

b.   Healy never seriously addressed the merits of Rose's motion to dismiss his suit for the years the issue was pending in the state trial and appellate courts.

c.   Healy is an attorney with significant litigation experience.  It is difficult to believe, and the court does not believe, that he did not understand that statements made by witnesses and parties in the context of litigation are privileged.  See Cal. Civil Code § 47(b).

d.   Before filing suit against Rose, Healy filed two actions against the attorney who replaced Healy, Charles Bauer, that were related to his litigation and disputes with Rose.  Both of those actions were dismissed pursuant to Cal. Code of Civ. Pro. § 425.16.  Yet, almost immediately after the dismissal of the second suit, Healy filed a suit against Rose that was obviously vulnerable to the same attack.

e.   There is no credible evidence that Healy consulted other attorneys or did research into the viability of the action against Rose.  The asserted consultation with other attorneys amounted to no more than casual conversations with

office-mates and friends who were attorneys about his
dispute with Rose.  None gave him legal opinions sanctioning
the suit.  For instance, one such attorney friend, Douglas
Whatley, testified only that he and Healy "bounced ideas and
legal remedies off of each other, as legal colleagues."  But
it is clear Whatley did not do any research on this issue.
He admitted that "I later came to understand that under
Civil Code Section 47, there were likely privileges that
would or could have prevented such a civil action. . . ."

f.    And, Healy produced no memoranda or notes concerning
his own legal research that was contemporaneous with the
filing of the suit against Rose.  While he testified that he
read a law review article and did research regarding an
"extrinsic fraud" theory, no specific, on-point authority
has been presented to this court.

g.    Finally, the complaint filed by Healy against Rose is
completely out of proportion to the amount in controversy,
$1,125.  It consists of 156 paragraphs, demands not only the
$1,125 but unspecified special damages and punitive damages
(which demand was later quantified by Healy at $1 million),
and includes numerous allegations unrelated to the payment
of the arbitration fee.

23.   To the extent any of the following conclusions of law
are findings of fact, they are incorporated by reference as
findings of fact.

### Conclusions of Law

1.    To the extent any of the foregoing findings of fact are
conclusions of law, they are incorporated by reference as

-8-

conclusions of law.

2. This Court is the proper venue for this proceeding. See 28 U.S.C. § 1409.

3. The claim asserted by plaintiff is a core proceeding. This action seeks a determination of the dischargeability of a debt. See 28 U.S.C. § 157(b)(2)(I).

4. Under 11 U.S.C. § 523(a)(6), a debt for willful and malicious injury by a debtor to another entity or to the property of another entity cannot be discharged in bankruptcy.

5. The filing and prosecution of a suit against Rose in state court for perjury was done to annoy and harass Rose, with Healy's knowledge that the suit lacked merit. In so doing, Healy acted deliberately, intentionally, and for purpose of injuring Rose. His conduct resulted in a willful injury to Rose.

6. A malicious injury is "one involving (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." See Murray v. Bammer (In re Bammer), 131 F.3d 788, 791 (9th Cir. 1997).

7. Here, Healy filed and prosecuted a suit against Rose even though he likely knew it lacked merit for the purpose of harassing Rose. There was no just cause or excuse for this conduct, particularly considering the fact that Healy was an attorney, and his conduct necessarily caused injury to Rose.

Therefore, this court will enter a separate judgment declaring that the outstanding amounts awarded by the state court in connection with the civil action filed by Healy against Rose to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

///

1    A conforming form of judgment shall be lodged by the

2   plaintiff within 14 days of the date of these findings of fact

3   and conclusions of law.

4   Dated: *29 March 2013*                By the Court

5

6                                         _____

7                                         Michael S. McManus, Judge
                                          United States Bankruptcy Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF MAILING**

I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

Stephanie Finelli
1007 7th St #500
Sacramento, CA 95814

Kevin Healy
465 Stony Point Rd #215
Santa Rosa, CA 95401

Dated: March 29, 2013

_Susan C. Cox_
Susan C. Cox
Judicial Assistant to Judge McManus